## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>                          Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered) |
| YRC INC.,<br><br>                          Plaintiff,<br><br>     v.<br><br>TURN 5, INC.<br><br>                          Defendant. | Adversary Proceeding No. _____ |

## **COMPLAINT**

This adversary proceeding is brought by Plaintiff YRC Inc. ("Yellow"), as debtor and debtor-in-possession in the jointly administered chapter 11 cases of Yellow Corporation and its subsidiaries pending before the United States Bankruptcy Court for the District of Delaware. Yellow, by and through its undersigned counsel, states as its Complaint against Defendants Turn 5, Inc., ("Turn 5") the following:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

## INTRODUCTION

1.      For over a year, Yellow has tried in vain to collect its accounts receivable from Turn 5.  Prior to the commencement of these chapter 11 cases, Yellow provided valuable transportation services to Turn 5 under an implied-in-fact contract between August 2022 and July 2023.  It cannot be disputed that Turn 5 accrued payment obligations to Yellow not less than $346,008.48 on account of the transportation services provided by Yellow, nor is there any question that money is legally owed to Yellow.  Despite Yellow's repeated demands for payment and ample opportunity to satisfy its outstanding debt—which, upon the commencement of these chapter 11 cases, became property of the bankruptcy estate—Turn 5 has willfully refused to honor its obligations and withheld funds that are estate property.  Yellow now brings this action to enforce its rights and secure the compensation for services provided in good faith and in reliance of Turn 5's promises.

## Nature of the Action

2.      On August 6, 2023 (the "Petition Date"), Yellow Corporation and certain of its subsidiaries, including Yellow (collectively, the "Debtors"), each filed a voluntary petition in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  In the First Day Declaration,[2] the Debtors stated that they commenced these chapter 11 cases to pursue an orderly wind-down of their estates in order to maximize value and minimize the impact of the shutdown of the Debtors' business for all stakeholders.[3]  As of the date of this filing, the Debtors have successfully sold a majority of their assets and paid off all their secured debt.

---

[2]     ECF No. 14, *Decl. of Matt Doheny, Chief Restructuring Officer of the Debtors, in Supp. of the Debtors' Chapter 11 Pets. and First Day Mots.* (filed August 7, 2023) (the "Doheny Decl.").

[3]     *See In re Yellow Corporation,* et al., Case No. 23-11069 (CTG) (Bankr. Del. Aug. 7, 2023), ECF No. 14.

3.      In connection with the Debtors' chapter 11 cases, this adversary proceeding seeks a declaratory judgment for immediate turnover of estate property.  In the alternative, Yellow asserts claims of breach of contract, account stated, quantum meruit, and unjust enrichment, and seeks restitution as damages.

## Parties

4.      YRC Inc. d/b/a YRC Freight is a Delaware corporation with its principal place of business located at 10990 Roe Avenue, Overland Park, Kansas 66211.

5.      On the Petition Date, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.[4]

6.      The Debtors are debtors-in-possession in the above-captioned bankruptcy proceedings by virtue of filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date.

7.      Defendant Turn 5, upon information and belief, is a Pennsylvania corporation with its principal place of business located at 600 Cedar Hollow Road, Paoli, PA 19301.

## Jurisdiction and Venue

8.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District

---

[4]      *See In re Yellow Corporation,* et al., Case No. 23-11069 (CTG) (Bankr. Del. Aug. 7, 2023), ECF No. 169.

of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this

matter to the extent that it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgments in connection herewith consistent with Article III of the United

States Constitution.

9.      This is a core proceeding under 28 U.S.C. § 157(b).

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408-09.

## FACTS

11.     Prior to the Petition Date, Yellow was a leading trucking and logistics company,

boasting one of the largest less-than-truckload ("LTL") networks in North America.

12.     This network enabled Yellow to provide customers with regional, national, and

international shipping services of transportation logistics and LTL services.

13.     Turn 5, upon information and belief, is an e-commerce business specializing in the

aftermarket auto parts industry.

14.     For years, Yellow and Turn 5 (together, the "Parties") operated under an implied-

in-fact contract under which Yellow would provide transportation services to Turn 5 and in

exchange Turn 5 would compensate Yellow for such transportation services within a reasonable

period of time pursuant to invoices issued by Yellow (the "Agreement").

15.     Under the Agreement, Yellow agreed to and did provide interstate, intrastate, and

foreign commerce motor carrier services as requested by Turn 5 (the "Transportation Services").

16.     In exchange for those Transportation Services, Turn 5 agreed to compensate

Yellow in accordance with the schedule of rates and charges set forth under any invoices it received

in connection with such Transportation Services.

17.     The Parties performed pursuant to the Agreement in the ordinary course of their business, with Yellow providing Transportation Services to Turn 5 between August 3, 2022 and July 27, 2023.

18.     During the Parties' relationship, Yellow provided Transportation Services to Turn 5 valued at $346,008.48[5] for which Turn 5 never paid.

19.     Despite acknowledging receipt of the relevant invoice(s), Turn 5 never paid Yellow for those Transportation Services and continues to withhold payment.

20.     Shortly after commencing these chapter 11 cases, the Debtors contacted Turn 5 demanding payment of the past due balances under the invoices.

21.     Turn 5 claims it incurred costs allegedly imposed by Yellow's bankruptcy, and yet Turn 5 did not file a proof of claim. As a result, a balance of $346,008.48 remains due and owing from Turn 5 to Yellow.

22.     Yellow has maintained communication with Turn 5 during the pendency of these chapter 11 cases seeking payment of past due balances under the invoices and exploring in good faith opportunities where the Parties might compromise.

23.     On September 24, 2025, Yellow sent a letter to Turn 5 demanding payment for the $346,008.48 in outstanding accounts receivable and informing Turn 5 that Yellow intended to pursue legal action to recover the debt owed.

24.     As of the date of this filing, Turn 5 has disregarded Yellow's demand for payment and continues to withhold payment.

---

[5]   This figure represents the aggregate value of the Transportation Services that Yellow believes are in dispute according to Yellow's records. Despite repeated attempts at outreach, Turn 5 has refused to meaningfully engage with Yellow on the specific amount in dispute. Yellow believes there are potentially additional amounts owed by Turn 5 but has been unable to confirm due to Turn 5's lack of engagement.

25.     Put simply, Turn 5 is required to pay Yellow for the Transportation Services Yellow rendered to Turn 5 pursuant to the Agreement, as reflected on the relevant invoices.

26.     Because Turn 5 has impermissibly withheld payment of valid charges reflected on the relevant invoices, Turn 5 currently owes not less than $346,008.48 to Yellow.

## CLAIMS FOR RELIEF

### COUNT I
**Turnover under 11 U.S.C. § 542(b)**

27.     Yellow realleges and incorporates the preceding paragraphs as if set forth fully herein.

28.     Prior to the commencement of the bankruptcy case, Yellow rendered valuable services to Turn 5 for which Yellow has not been compensated.

29.     Turn 5's obligation to compensate Yellow for the Transportation Services described above is fixed, presently due, and owing; no further act, event, or condition precedent is required to trigger Turn 5's duty to pay such compensation.

30.     The right to receive compensation for the pre-petition services rendered to Turn 5 constitutes property of the Debtors' bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1) and is subject to administration by the estate for the benefit of creditors.

31.     A claim seeking payment for uncompensated services is sufficient to plead turnover because, once the services have been provided and payment is due, no further act or event is required to make the debt matured and payable on demand.  *See e.g., In re Black Diamond Mining Co.*, 2009 WL 1657575, at *8 (Bankr. E.D. Ky. June 11, 2009) (citing *In re Nuckols and Assocs. Sec., Inc.*, 109 B.R. 294, 296 (Bankr. S.D. Ohio 1989)).

32.     Turn 5 is thus required to compensate Yellow in the amount of not less than $346,008.48.

## <u>COUNT II</u>
### Breach of Contract

33.    Yellow realleges and incorporates the preceding paragraphs as if set forth fully herein.

34.    If this Court finds recovery under the turnover claim unwarranted, then Yellow claims breach of contract in the alternative.

35.    In accordance with the Agreement, and upon Turn 5's request, Yellow performed Transportation Services amounting to not less than $346,008.48.

36.    Turn 5 has a contractual obligation to pay Yellow for Transportation Services in connection with the Agreement.

37.    Yellow properly invoiced Turn 5 for the Transportation Services totaling at least $346,008.48.

38.    As of the date of this filing, the amount due and outstanding under the invoice(s) is not less than $346,008.48, owed to Yellow under the terms of the Agreement.

39.    As previously described, Yellow has repeatedly requested payment from Turn 5 to no avail.

40.    Yellow has performed under the Agreement in all material respects.

41.    Turn 5 has, on multiple occasions, accepted and acquiesced in Yellow's performance under the Agreement, as evidenced by its repeated acceptance of Yellow's services. This established pattern of conduct demonstrates a course of performance under the Agreement, wherein Turn 5, with knowledge of Yellow's manner of performance, continued to accept such performance and rendered payment accordingly, thereby manifesting its assent to Yellow's performance as conforming to the Agreement.

42.     Turn 5's failure to pay the total outstanding invoices is a material breach of the Agreement.

43.     Yellow has been damaged by Turn 5's breach and is entitled to damages to compensate Yellow for that breach.

44.     As a result, Turn 5 owes Yellow an amount not less than $346,008.48.

45.     In its capacity as the Debtors in Possession of the aforementioned chapter 11 cases, Yellow has an obligation under 11 U.S.C. §§ 704, 1107 to collect accounts receivable owed to the estate and, if this invoice remains unpaid, Yellow will continue to suffer from Turn 5's breach because it will deprive the estate of additional value that could be distributed to unsecured creditors following the effective date of the Debtors' chapter 11 plan.

## COUNT III
### Account Stated

46.     Yellow realleges and incorporates the preceding paragraphs as if set forth fully herein.

47.     If this Court finds that an award of damages under the turnover or breach of contract claims unwarranted, then Yellow claims account stated in the alternative.

48.     The parties' performance under the Agreement establishes a debtor-creditor relationship between Yellow and Turn 5 because Yellow provided the Transportation Services up-front and on credit, and Turn 5 is obligated to pay Yellow after services have been rendered.

49.     Turn 5 received invoice(s) from Yellow for Transportation Services Yellow provided to Turn 5.

50.     Turn 5 has not disputed the invoiced amount for the Transportation Services.

51.    By requesting that Yellow provide the Transportation Services and Turn 5's history of paying Yellow's invoices for Transportation Services upon receipt, Turn 5 objectively assented to a payment obligation to Yellow for services rendered.

52.    Therefore, Turn 5 owes to Yellow an amount not less than $346,008.48.

**COUNT IV**
**Quantum Meruit**

53.    Yellow realleges and incorporates the preceding paragraphs as if set forth fully herein.

54.    If this Court finds that an award of damages under the turnover, breach of contract, or account stated claims is unwarranted, then Yellow claims quantum meruit in the alternative.

55.    Yellow furnished valuable services to Turn 5 with the expectation that Yellow would be paid for those services.

56.    Yellow had a reasonable expectation of being compensated for its services.

57.    Without reason or justification, Turn 5 has refused to pay Yellow any compensation for the Transportation Services at issue.

58.    By refusing to pay Yellow for the Transportation Services, Turn 5 has unfairly benefitted, and Yellow has suffered severe harm.

59.    If there is no adequate remedy at law, this Court should award Yellow quantum meruit to fairly compensate Yellow for the value of the Transportation Services.

60.    As a result, Turn 5 owes Yellow an amount not less than $346,008.48.

**COUNT V**
**Unjust Enrichment**

61.    Yellow realleges and incorporates the preceding paragraphs as if set forth fully herein.

62.     If this Court finds that an award of damages under the turnover, breach of contract, account stated, or quantum meruit claims is unwarranted, then Yellow claims unjust enrichment in the alternative.

63.     Even if Turn 5 was not contractually obligated to compensate Yellow for the Transportation Services at issue, Yellow justifiably relied on the ongoing assurances Turn 5 gave to Yellow that Turn 5 would pay for the Transportation Services.

64.     The Transportation Services provided by Yellow conferred a benefit to Turn 5 that enabled Turn 5 to move its goods and property into the stream of commerce and derive revenue through the conduct of its business.

65.     It would be an injustice to permit Turn 5 to retain the benefit of the valuable services provided by Yellow without compensating Yellow for the Transportation Services.

66.     As a result, Turn 5 owes Yellow an amount not less than $346,008.48.

## Prayer for Relief

WHEREFORE, Yellow respectfully requests that the Court enter judgment in favor of Yellow as follows:

(a)     An order requiring immediate turnover of estate property held by Turn 5 in the amount of $346,008.48;

(b)     In the alternative, awarding Yellow actual damages in the amount not less than $346,008.48 (plus reasonable interest as determined by this Court) to compensate it for any loss sustained;

(c)     An award of reasonable attorneys' fees and costs incurred in this action; and

(d)     Granting Yellow such other relief as the Court deems appropriate under the circumstances.

Wilmington, Delaware
Dated: November 10, 2025

/s/ *Peter J. Keane*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | Casey McGushin (admitted *pro hac vice*) |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 919 North Market Street, 17th Floor | 333 West Wolf Point Plaza |
| P.O. Box 8705 | Chicago, Illinois 60654 |

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:         ljones@pszjlaw.com
               tcairns@pszjlaw.com
               pkeane@pszjlaw.com
               ecorma@pszjlaw.com

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
Casey McGushin (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         patrick.nash@kirkland.com
               david.seligman@kirkland.com
               casey.mcgushin@kirkland.com

- and -

Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         allyson.smith@kirkland.com

*Co-Counsel for the Debtors*
*and Debtors in Possession*