**<u>Exhibit A</u>**

**Revised Confirmation Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND ORDER CONFIRMING THE FOURTH AMENDED**
**JOINT CHAPTER 11 PLAN OF YELLOW CORPORATION AND**
**ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE**
**BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS (TECHNICAL MODIFICATIONS)**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"),

having:[2]

a.    commenced, on August 6, 2023 (the "<u>Petition Date</u>") and August 7, 2023, these chapter 11 cases (the "<u>Chapter 11 Cases</u>") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>");

b.    continued to manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.    obtained, on September 15, 2023, entry of the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of*

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is:  11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "<u>Confirmation Order</u>") have the meanings given to them in the *Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors (Technical Modifications)*, attached hereto as **Exhibit A** (the "<u>Plan</u>") or the Disclosure Statement Order (as defined below), as applicable.  The rules of interpretation set forth in Article I of the Plan shall apply to this Confirmation Order.

*Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order");

d.      obtained, on September 21, 2023, entry of the *Order (I) Approving the Debtors' Selection of a Stalking Horse Bidder, (II) Approving Bid Protections in Connection Therewith, (III) and Granting Related Relief* [Docket No. 624];

e.      obtained, on October 27, 2023, entry of the *Order (I) Approving Agency Agreements with Nations Capital LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros, Auctioneers (Canada) Ltd. and IronPlanet Canada Ltd. Effective as of October 16, 2023; (II) Authorizing the Sale of Rolling Stock Asset Free and Clear of Liens, Claims, Interests and Encumbrances; and (III) Granting Related Relied* [Docket No. 981];

f.      obtained, on November 8, 2023, entry of the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1055];

g.      obtained, on December 12, 2023, entry of the *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Real Property Assets of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, in Each Case as Applicable Pursuant to the Applicable Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 1354];

h.      obtained, on January 12, 2024, entry of the *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Leased Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, in Each Case as Applicable Pursuant to the Applicable Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 1735];

i.      obtained, on February 22, 2024, entry of the *Order (I) Approving Certain Asset Purchase Agreement; (II) Authorizing and Approving the Sale of Certain Leased Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to the Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Unexpired Leases in Connection Therewith Pursuant to the Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 2346];

j.      obtained, on February 26, 2024, entry of the *Order Authorizing the Debtors to Establish Alternative Dispute Resolution Procedures for Resolution of Certain Litigation Claims and Granting Related Relief* [Docket No. 2389];

k.      obtained, on February 28, 2024, entry of the second *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2449];

l.      filed, on March 1, 2024, the *Notice of Amendment to that Certain Agency Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd. and IronPlanet Canada Ltd Effective as of October 16, 2023* [Docket No. 2489];

m.      obtained, on June 4, 2024, entry of the third *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 3590];

n.      filed, on July 3, 2024, *Debtors' Motion for Summary Judgment* in the SFA MEPP Litigation;[3]

o.      obtained, on August 23, 2024, entry of the *Order (I) Authorizing the Retention and Employment of CBRE, Inc. as Real Estate Broker and Advisor to the Debtors Effective as of August 16, 2024 and (II) Granting Related Relief* [Docket No. 4183];

p.      filed, on September 2, 2024, (a) the *Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4253] and (b) the *Disclosure Statement for the Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4254];

q.      filed, on September 6, 2024, *Debtors' Motion for Summary Judgment* as to the approximately 1,300 proofs of claim and adversary proceedings alleging theories under state and federal WARN acts that have been filed in these Chapter 11 Cases (together, the "WARN Claims and Proceedings") [Docket No. 4290];

r.      filed, on September 11, 2024, *Debtors' Memorandum of Law in Support of Their Motion for Summary Judgment* in the WARN Claims and Proceedings [Docket No. 4316];

s.      obtained, on September 11, 2024, entry of the fourth *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 4306];

t.      obtained, on September 13, 2024, a partial summary judgment in favor of the Debtors regarding the SFA MEPP Litigation, the *Memorandum Opinion* [Docket No. 4326];

u.      filed, on September 27, 2024, the *Debtors' Motion to Reconsider in Part the September 13, 2024 Memorandum Opinion Finding a Withdrawal Liability Default in Advance of a*

---

[3]     The "SFA MEPP Litigation" means, collectively, the *Central States Pension Fund's Motion for Partial Summary Judgment* [Docket No. 3803], *Motion for Summary Judgment Filed by Certain Pension Funds* [Docket No. 3805], *Debtors' Motion for Partial Summary Judgment on SFA MEPPS' Withdrawal Liability Claims* [Docket No. 3825], and the *Pension Benefit Guaranty Corporation's Motion for Partial Summary Judgment & Opposition to Summary Judgement for Debtors* [Docket No. 3882].

*Withdrawal Liability Payment Obligation* [Docket No. 4461][4] (the "SFA MEPP Reconsideration Motion");

v.    filed, on October 9, 2024, *Debtors' Reply in Support of Their Motion for Summary Judgment* in the WARN Claims and Proceedings [Docket No. 4529];

w.    filed, on October 17, 2024, (a) the *First Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4580] and (b) the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4581];

x.    obtained, on November 5, 2024, an order granting the SFA MEPP Reconsideration Motion, the *Order Granting Motions for Reconsideration and Posing Further Questions for the Parties to Consider* [Docket No. 4771];

y.    obtained, on November 19, 2024, entry of the fifth *Order (I) Extending the Debtors' Exclusive Period to Solicit Acceptances of a Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 4953];

z.    filed, on November 20, 2024, (a) the *Second Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4974] and (b) the *Second Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4975];

aa.    obtained, on November 22, 2024, the *Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballot and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 5024];

bb.    obtained, on December 2, 2024, entry of the *Order Relating to SFA MEPP Litigation Motions for Summary Judgment and Motions to Reconsider* [Docket No. 5057] (the "SFA MEPP Order");

cc.    filed, on December 12, 2024, a notice of appeal of the SFA MEPP Order, the *Notice of Appeal* [Docket No. 5170];

---

[4]    *See also Motion of MFN Partners, LP and Mobile Street Holdings, LLC Pursuant to 11 U.S.C. § 502(j) and Federal Rules of Bankruptcy Procedure 3008 and 9023 Requesting Reconsideration of Court's Entry of Partial Summary Judgment in Favor of Pension Plans and Joining Debtor Reconsideration Motion* [Docket No. 4462]; *Ad Hoc Group of Equity Holders' Joinder to the Debtor Reconsideration Motion and the MFN and Mobile Street Reconsideration Motion* [Docket No. 4463]; *Qualified Joinder of the Official Committee of Unsecured Creditors of Yellow Corporation, et al., to the Debtors' Motion to Reconsider in Part the September 13, 2024 Memorandum Opinion Finding a Withdrawal Liability Default in Advance of a Withdrawal Liability Payment Obligation* [Docket No. 4543]; *Debtors' Omnibus Reply in Support of Their Motion to Reconsider* [Docket No. 4649].

dd.     filed, on December 13, 2024, (a) the *Joint Motion of Debtors, MFN Partners, LP and Mobile Street Holdings, LLC for Leave to File Interlocutory Appeal to the United States District Court for the District of Delaware* [Docket No. 5178] and (b) the *Joint Request of Debtors, MFN Partners, LP and Mobile Street Holdings, LLC for Certification for Direct Appeal to the United States Court of Appeals for the Third Circuit* [Docket No. 5179];

ee.     obtained, on December 18, 2024, entry of the *Order (I) Approving (A) the Asset Purchase Agreement with Estes Express Lines and (B) the Asset Purchase Agreement with Ramar Land Corporation; (II) Authorizing and Approving the Sale of the Acquired Assets Under the Asset Purchase Agreements Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption and Assignment of Certain Unexpired Leases Under the Estes Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 5222];

ff.     obtained, on December 19, 2024, the *Memorandum Opinion*, granting in part and denying in part summary judgment in the WARN Claims and Proceedings and scheduling a trial on the remaining issues [Docket No. 5227];

gg.     obtained, on January 9, 2025, entry of the *Order Granting Direct Certification of Debtors', MFN Partners, LP's and Mobile Street Holdings, LLC's Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2)* [Docket No. 5358];

hh.     obtained, on January 13, 2025, a partial summary judgment in favor of the Debtors regarding the WARN Claims and Proceedings, the *Order Relating to Motions for Summary Judgment Filed in Connection with WARN Claims and Proceedings* [Docket No. 5390];

ii.     obtained, on January 30, 2025, entry of the *Order (I) Approving (A) the Asset Purchase Agreement with Central Transport, LLC and (B) the Asset Purchase Agreement with Ramar Land Corporation; (II) Authorizing and Approving the Sale of the Acquired Assets Under the Asset Purchase Agreements Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption and Assignment of Certain Unexpired Leases Under the Central Transport Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 5584];

jj.     obtained, on February 5, 2025, the *Memorandum Opinion*, granting in part the Debtors' motions for partial summary judgment on the withdrawal liability claims of the multiemployer pension funds who did not receive special financial assistance from the federal government prior to the Petition Date [Docket No. 5619];

kk.     obtained, on February 21, 2025, entry of the *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Leased Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, in Each Case as Applicable Pursuant to the Applicable Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 5742];

ll.     obtained, on February 28, 2025, a grant of the petition for direct appeal of the SFA MEPP Order by the United States Court of Appeals for the Third Circuit (the "Third Circuit"), which appeal was docketed on March 11, 2025 under case number 25-1421 (the "Appeal Docket") [Appeal Docket No. 1];

mm.     filed, on February 28, 2025, the *Joint Motion Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 7023 and 9019 to (I) Approve a Settlement Pursuant to Fed. R. Bankr. P. 9019, (II) Preliminarily Approve the Settlement Pursuant to Fed. R. Bankr. P. 7023, (III) Approve the Form and Manner of Settlement Notice to Class Members, (IV) Schedule a Fairness Hearing to Consider Final Approval of the Settlement, (V) Finally Approve the Settlement Pursuant to Fed. R. Bankr. P. 7023 After the Fairness Hearing, and (VI) Grant Related Relief* [Docket No. 5823] (the "Moore Settlement Motion") and the *Joint Motion Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 (I) Approving a Settlement Pursuant to Fed. R. Bankr. P. 9019 and (II) Granting Related Relief* [Docket No. 5824] (the "Coughlen Settlement Motion");

nn.     filed, on March 5, 2025, the *Second Notice of Amendment to that Certain Agency Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd. and IronPlanet Canada Ltd Effective as of October 16, 2023* [Docket No. 5839];

oo.     obtained, on March 11, 2025, entry of the *Order (I) Approving the Asset Purchase Agreements with ABF Freight System, Inc.; (II) Authorizing and Approving the Sale of the Acquired Assets Under the Asset Purchase Agreements Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Approving the Assignment of Certain Unexpired Leases Under the Asset Purchase Agreements; and (IV) Granting Related Relief* [Docket No. 5861];

pp.     obtained, on March 12, 2025, entry of the *Order Relating to the Trial on the Merits Held in Connection with the WARN Claims and Proceedings* [Docket No. 5867] (the "WARN Order");

qq.     filed, on March 26, 2025, a notice of cross-appeal of the WARN Order to the United States District Court for the District of Delaware, the *Debtors' Notice of Cross-Appeal* [Docket No. 5975], which appeal was docketed at case number 25-0307;

rr.     filed, on March 28, 2025, (a) the *Third Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 5995] and (b) the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 5996];

ss.     obtained, on April 7, 2025, the *Memorandum Opinion Setting Forth Preliminary Observations on Remaining Multiemployer Pension Plan Claims Allowance Disputes* [Docket No. 6030] (the "Preliminary Observations");

tt.     obtained, on May 14, 2025, entry of the *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances in Each Case Pursuant to the Applicable Asset Purchase Agreement; and (III) Granting Related Relief* [Docket No. 6326];

uu.     obtained on May 24, 2025, entry of an order approving the Coughlen Settlement Motion [Docket No. 5950] and entry of an order preliminary approving the Moore Settlement Motion [Docket No. 5951];

vv.     filed, on April 15, 2025, the *Third Notice of Amendment to That Certain Agency Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd. and IronPlanet Canada Ltd Effective as of October 16, 2023* [Docket No. 6073];

ww.    filed, on May 27, 2025, the *Reply Brief of Debtor Appellants on Withdrawal Liability Calculation Issue and Joinder to Reply Brief on PBGC Regulation Issues* [Appeal Docket No. 78];

xx.     obtained, on June 18, 2025, entry of the *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances in Each Case Pursuant to the Applicable Asset Purchase Agreement; and (III) Granting Related Relief* [Docket No. 6535];

yy.     obtained, on June 18, 2025, the *Order Regarding the Motion of MFN Partners, LP and Mobile Street Holdings, LLC for Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [Docket No. 6537];

zz.     obtained, on June 20, 2025, entry of the *Order (I) Approving the Asset Purchase Agreement with Saia Motor Freight Line, LLC; (II) Authorizing and Approving Sales of Certain Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances in Each Case Pursuant to the Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief* [Docket No. 6546];

aaa.    obtained, on July 8, 2025, entry of the *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Properties of the Debtors Free and Clear of Liens, Claims, Interests and Encumbrances in Each Case Pursuant to the Applicable Asset Purchase Agreement; and (III) Granting Related Relief* [Docket No. 6652];

bbb.    obtained, on July 18, 2025, entry of the *Order Relating to Multiemployer Pension Plan Motions for Summary Judgment* [Docket No. 6682], giving effect to the Preliminary Observations;

ccc.    filed, on July 29, 2025, (a) the *Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*

*Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 6746] and (b) the *Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 6747];

ddd.   filed, on July 29, 2025, the *Motion of Debtors for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 6748];

eee.   obtained, on July 30, 2025, entry of the *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances in Each Case Pursuant to the Applicable Asset Purchase Agreement; and (III) Granting Related Relief* [Docket No. 6750];

fff.   obtained, on September 2, 2025, entry of the *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances in Each Case Pursuant to the Applicable Asset Purchase Agreement; and (III) Granting Related Relief* [Docket No. 7541];

ggg.   filed, on September 2, 2025, the *Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 7547] (the "Disclosure Statement");

hhh.   obtained, on September 15, 2025, entry of the *Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures (III) the Form of Ballot and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 7608] (the "Disclosure Statement Order"), which approved, among other things, the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code, the solicitation and voting procedures (the "Solicitation and Voting Procedures"), the form of ballot and notices in connection therewith (the "Ballot"), the form of cover letter, and other related materials (the foregoing materials, collectively, the "Solicitation Packages");

iii.   filed, on September 16, 2025, the solicitation version of the *Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 7619];

jjj.   obtained, on September 16, 2025, the Third Circuit's entry of judgment affirming the SFA MEPP Order, the *Entry of Judgment* [Appeal Docket No. 104] and (b) the *Opinion of the Court* [Appeal Docket No. 103];

kkk.    filed, on September 16, 2025, the *Notice of Hearing to Consider Confirmation of the Fourth Amended Joint Chapter 11 Plan and Related Voting and Objection Deadlines* [Docket No. 7620] (the "<u>Confirmation Hearing Notice</u>");

lll.    caused the Confirmation Hearing Notice to be published in *The New York Times* (national edition) on September 25, 2025, and *The Globe and Mail* on September 26, 2025, as evidenced by, among other things, the *Proof of Publication* [Docket Nos. 7706, 7707] (the "<u>Publication Affidavit</u>," and together with the Solicitation Affidavit, the "<u>Affidavits</u>");

mmm.    obtained, on October 2, 2025, entry of the *Order (I) Approving the Asset Purchase Agreement with Phelps Properties-Earls Rd, LLC; (II) Authorizing and Approving the Sale of a Certain Property of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances; and (III) Granting Related Relief* [Docket No. 7727];

nnn.    caused the Solicitation Packages, the notices of non-voting status (the "<u>Non-Voting Status Notices</u>"), and the Confirmation Hearing Notice to be distributed on or before September 29, 2025, in accordance with the Disclosure Statement Order, as evidenced by, among other things, the *Certificate of Service of Solicitation Documents* [Docket No. 7775] (the "<u>Solicitation Affidavit</u>") and the Voting Report (as defined below);

ooo.    filed, on October 15, 2025, (a) the *Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 7787] (as may be altered, amended, modified, or supplemented from time to time, the "<u>Plan Supplement</u>") and (b) *Notice of Filing of Plan Supplement* [Docket No. 7788];

ppp.    filed, on October 16, 2025, (a) the *First Amended Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 7798] (the "<u>First Amended Plan Supplement</u>") and (b) *Notice of Filing of First Amended Plan Supplement* [Docket No. 7799];

qqq.    filed, on October 22, 2025, (a) the *Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 7860] and (b) *Notice of Filing of Second Amended Plan Supplement* [Docket No. 7861];

rrr.    filed, on October 29, 2025, the *Notice of Extension of Deadline for Voting on the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 7915] (the "<u>Voting Extension Notice</u>");

sss.    filed, on November 5, 2025, the *Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding the Solicitation and Tabulation of Ballots Cast on the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official*

*Committee of Unsecured Creditors* [Docket No. 8122] (as may be amended, modified, or supplemented, the "Voting Report");

ttt.  obtained, on November 7, 2025, entry of the *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances in Each Case Pursuant to the Applicable Asset Purchase Agreement; and (III) Granting Related Relief* [Docket No. 8130];

uuu.  filed, on November 9, 2025, (a) the *Third Amended Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 8146] and (b) *Notice of Filing of Third Amended Plan Supplement* [Docket No. 8147];

vvv.  filed, on November 9, 2025, the *Declaration of Brian Whittman, in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 8148] (the "Whittman Declaration"); and

www.  filed, on November 9, 2025, the *Debtors' Memorandum of Law in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 8149] (the "Confirmation Brief").

This Bankruptcy Court having:

a.  entered, on September 15, 2025, the Disclosure Statement Order;

b.  set October 22, 2025, as the deadline for filing the Plan Supplement;

c.  set October 29, 2025, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Plan (the "Plan Objection Deadline");

d.  set October 29, 2025, at 4:00 p.m., prevailing Eastern Time, as the deadline for voting on the Plan (the "Voting Deadline")[5];

e.  set October 29, 2025, at 4:00 p.m., prevailing Eastern Time, as the deadline to opt in to the Third-Party Releases granted under the Plan (the "Opt-In Deadline");

f.  set November 12, 2025, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to rules 3017 and 3018 of the Federal Rules of

---

[5]  The Voting Deadline was extended to October 30, 2025 pursuant to the Voting Extension Notice in accordance with the terms of the Disclosure Statement Order.

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and sections 1126, 1128, and 1129 of the Bankruptcy Code;

g.  considered the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Whittman Declaration, the Voting Report, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

h.  held the Confirmation Hearing;

i.  heard the statements and arguments made by counsel in respect to the Confirmation of the Plan and the objections thereto;

j.  considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding the Confirmation of the Plan and having admitted the same into evidence at the Confirmation Hearing;

k.  overruled any and all objections to Confirmation of the Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

l.  considered the pleadings and other documents filed and all evidence and arguments proffered or otherwise presented with respect to the Confirmation of the Plan.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and all evidence proffered or adduced establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Findings of Fact and Conclusions of Law**

1.     The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order constitute the Bankruptcy Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.     Jurisdiction, Venue, Core Proceeding**

2.     The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper before the Bankruptcy Court pursuant to sections 1408 and 1409 of the Judicial Code.  Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of the Judicial Code.

**C.     Eligibility for Relief**

3.     The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors and the Committee (the "Plan Proponents") are proper proponents of the Plan under section 1121 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On August 9, 2023, the Bankruptcy Court entered the *Order (I) Directing the Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 169], authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have continued to manage their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.      Committee Appointment**

5.      On August 16, 2023 and as amended on May 20, 2024 and February 4, 2025, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket Nos. 269, 3430, and 5615] pursuant to section 1102 of the Bankruptcy Code, which Committee currently consists of (i) BNSF Railway, (ii) RFT Logistics LLC, (iii) Pension Benefit Guaranty Corporation, (iv) International Brotherhood of Teamsters, (v) Central States, Southeast and Southwest Areas Pension Fund, (vi) New York State Teamsters Pension and Health Funds, and (vii) Mr. Armando Rivera, c/o Raisner Roupinian LLP.[6]

**F.      Objections**

6.      This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and

---

[6]   Michelin North America, Inc., an initial member of the Committee, resigned from the Committee on May 20, 2024.  *See First Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 3430].  Daimler Trucks, N.A., an initial member of the Committee, resigned from the Committee on February 4, 2025.  *See Second Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 5615].

other documents filed and orders entered thereon.  The Bankruptcy Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.  Any resolution of objections to Confirmation explained on the record in these Chapter 11 Cases is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to Confirmation of the Plan are overruled on the merits.

## G.    Plan Supplement

7.    The documents identified in the Plan Supplement were filed as required, and notice of such documents was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Plan, the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with the terms of the Plan, this Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

**H.      Disclosure Statement Order**

8.      On September 15, 2025, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, (a) approved (i) the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (ii) the Solicitation and Voting Procedures, and (iii) the Solicitation Packages, (b) set October 29, 2025, at 4:00 p.m., prevailing Eastern Time, as the Plan Objection Deadline, (c) set October 29, 2025, at 4:00 p.m., prevailing Eastern Time, as the Voting Deadline, (d) set October 29, 2025, at 4:00 p.m., prevailing Eastern Time, as the Opt-In Deadline, and (e) set November 12, 2025, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing.   Pursuant to the Voting Extension Notice, the Voting Deadline was extended to October 30, 2025 at 4:00 p.m., prevailing Eastern Time.  The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims in Class 5 (the "Voting Class") to have made an informed decision to accept or reject the Plan.

**I.      Solicitation and Notice**

9.      The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

10.      As described in the Voting Report, the Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Disclosure Statement Order.   The solicitation of votes on the Plan complied with the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with sections 1125 and 1126 and all other

applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

11.     As described in the Voting Report and the Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**J.     Voting Report**

12.     Prior to the Confirmation Hearing, the Debtors filed the Voting Report.  The procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

13.     As set forth in the Plan, Holders of Claims the Voting Class for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation and Voting Procedures.[7]  Holders of Claims in Classes 1, 2, 3, 4A, and 4B are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of Claims and Interests in Classes 6, 7, 8, and 9 are Impaired and conclusively deemed to reject the Plan and, therefore, are not entitled to vote on the Plan.  In addition, Holders of Claims or Interests that are subject to a pending objection filed by the Debtors are not entitled to vote the disputed portion of their Claim or Interest.

---

[7]     For the avoidance of doubt, any Holder of a General Unsecured Claim that elected on its Ballot to opt into Class 4B – the Convenience Class shall have such Claim treated as a Convenience Class Claim and be deemed to accept the Plan.

14.     As evidenced by the Voting Report, Class 5 voted to accept the Plan.

**K.     Bankruptcy Rule 3016**

15.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**L.     Burden of Proof**

16.     The Debtors have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.  Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**M.     Plan Modifications**

17.     Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan after solicitation of the Plan, as reflected in the Plan or in this Confirmation Order (including any modifications announced on the record of the Confirmation Hearing) (the "Plan Modifications"), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially or adversely affect or change the treatment of any other Claim under the Plan. Subsequent to filing the solicitation version of the Plan [Docket No. 7619, Exhibit A] on September 16, 2025, the Debtors made certain Plan Modifications, which are reflected in the version of the Plan attached hereto as **Exhibit A**.  The Plan Modifications were made to address objections and informal comments received from various parties in interest.   The Plan Modifications do not materially or adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan.  After giving effect to the Plan Modifications, the Plan

continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of the Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan.

18.    No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.  Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such Plan Modifications shall be binding and shall apply with respect to the Plan.  All Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Interests who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

N.    **Presumed Acceptance of Plan as Modified**

19.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to have accepted the Plan as modified by the Plan Modifications.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**O.      Compliance with the Bankruptcy Code (11 U.S.C. §§ 1125 and 1127)**

20.      The Debtors have complied with section 1125 of the Bankruptcy Code with respect to the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**P.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)**

21.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**a)  Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))**

22.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

**i.      Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))**

23.      The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into nine Classes, based on differences in the legal nature or priority of such Claims and Interests (other than General Administrative Claims, Priority Tax Claims, and Professional Fee Claims, which are addressed in Article II of the Plan, and payment of U.S. Trustee statutory fees, which is addressed in Article XIII of the Plan, all of which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  In

accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii.    Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3))

24.    The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1, 2, 3, 4A, and 4B are Unimpaired. Article III of the Plan also specifies the treatment of Class 5, the Impaired Class entitled to vote on the Plan. Holders of Claims and Interests in Classes 6, 7, 8, and 9 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

### iii.    No Discrimination (11 U.S.C. § 1123(a)(4))

25.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with the Plan Proponents or as otherwise contemplated by the Liquidating Trust Agreement with respect to such Claim or Interest.

### iv.    Implementation of the Plan (11 U.S.C. § 1123(a)(5))

26.    The Plan and the various documents included in the Plan Supplement (collectively, the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the Plan Documents provide, in detail, adequate and proper means for the Plan's implementation, including by providing for, among other things, the creation of the Liquidating Trust, and the appointment of the Liquidating Trustee and the Liquidating Trust Board of Managers.

### v.    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))

27.    The Plan does not provide for the issuance of equity or other securities by the Debtors.  To the extent the beneficial interests in the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, such beneficial interests shall not be non-voting equity securities.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### vi.    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))

28.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The Plan discharges all of the Debtors' officers, directors, members, and managers from their duties effective as of the Effective Date without any further action.  The Plan further provides for the dissolution of the Debtors, the appointment of the Liquidating Trust Board of Managers, and the appointment of the Liquidating Trustee.  The identities of the Liquidating Trustee and the Liquidating Trust Board of Managers are disclosed in the First Amended Plan Supplement.

### vii.    Discretionary Contents of the Plan (11 U.S.C. § 1123(b))

29.    The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

### (a)    Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))

30.    Upon the occurrence of the Effective Date, Article V.A of the Plan provides that, pursuant to sections 365 and 1123 of the Bankruptcy Code, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected, shall be deemed automatically rejected, unless such Executory Contract or Unexpired Lease:  (1) is identified on the Assumed

Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Effective Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is a Third-Party Sale Transaction Document; or (6) is to be assumed by the Debtors and assigned in connection with a Third-Party Sale Transaction and pursuant to the Third-Party Sale Transaction Documents.

31.     Neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' or the Estates' authority under the Third-Party Sale Transaction Documents to assume and assign Executory Contracts and Unexpired Leases pursuant to the Third-Party Sale Transaction Documents.  Notwithstanding anything to the contrary in the Plan or the Third-Party Sale Transaction Documents, the Debtors and the Committee reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule in the Plan Supplement.

32.     The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

**(b)   Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))**

33.     **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article IX.B of the Plan (the "<u>Debtor Release</u>").  The Debtor Release is an essential component of the Plan.  The scope of the Debtor Release is appropriately tailored under

the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is given and made after due notice and opportunity for hearing.

34.     The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of a good-faith and arm's-length negotiation between sophisticated parties that had representation from able counsel and advisors.  The Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these Chapter 11 Cases is critical to the Debtors' successful emergence from bankruptcy.  Each of the Released Parties shares a common goal with the Debtors in seeing the Plan succeed and implementing the transactions contemplated in the Plan.  The evidence establishes that the Debtors conducted a thorough analysis of the Debtors' claims and causes of action in determining to grant the Debtor Release and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

35.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to facilitating the Liquidation Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors, their Estates, the Liquidating Trust, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, the Liquidating Trust, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

36.     **Releases by Holders of Claims and Interests.**   Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article IX.C of the Plan (the "Third-Party Release").   The Third-Party Release is given and made after due notice and opportunity for hearing.

37.     The Third-Party Release is consensual with respect to the Releasing Parties.   The Ballots sent to all Holders of Claims and Interests entitled to vote, the Non-Voting Status Notices sent to Holders of Claims and Interests not entitled to vote, the Notice to Disputed Claim Holders sent to Holders of Claims and Interests subject to pending objection by the Debtors, the Plan Supplement Notice, Notices of Assumption of Executory Contracts and Unexpired Leases, and the Confirmation Hearing Notice sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan.   Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, and the deadline to object to confirmation of the Plan, were provided the opportunity to opt in to the Third-Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors that checked the "Opt-In" box on their timely submitted Ballot, or did not vote on the Plan but checked the "Opt-In" box on their timely submitted Opt-In Form, would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all Claims and Causes of Action against the Debtors and the Released Parties to the extent set forth in and consistent with the terms of the Plan.   Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots,

and the Non-Voting Status Notices.  Thus, the Third-Party Release is consensual as to those Releasing Parties that opted into the Third-Party Release as described above.

38.    Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and the Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; (h) a sound exercise of the Debtors' business judgment; and (i) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

39.    **Exculpation.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in Article IX.D of the Plan (the "Exculpation").  The Exculpation is essential to the Plan.  The evidence before the Bankruptcy Court demonstrates that the Exculpated Parties owed and complied with their fiduciary duties to the Debtors and their Estates in their willingness and efforts to support the Debtors' Chapter 11 Cases.  The Exculpation appropriately affords protection to the Exculpated Parties who participated in and contributed to the Debtors' chapter 11 process consistent with their fiduciary duties, and it is appropriately tailored to protect the Exculpated Parties from, among other things, inappropriate litigation.

40.     **Injunction.**  Sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article IX.E of the Plan (the "Injunction") and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article IX of the Plan.  Such Injunction is appropriately tailored to achieve those purposes.

41.     Except as otherwise provided herein, as of the Effective Date, all releases, exculpations, and injunctions set forth in the Plan and this Confirmation Order shall be effective and binding on all Persons.  The Plan and this Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for in, or resolved pursuant to, the Plan and this Confirmation Order, including the release, injunction, and exculpation provisions contained in the Plan and this Confirmation Order.  Accordingly, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

42.     **Retained Causes of Action.**  The Retained Causes of Action, set forth in the Plan Supplement are essential to the Plan and appropriate under the facts and circumstances of these Chapter 11 Cases.  Additionally, and in accordance with section 1123(b) of the Bankruptcy Code, the Retained Causes of Action are preserved and transferred to the Liquidating Trust on the Effective Date.

**viii.     Cure of Defaults (11 U.S.C. § 1123(d))**

43.     Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan (it being understood that the assumption and assignment of

the Executory Contracts or Unexpired Leases pursuant to the Third-Party Sale Transaction Documents shall be authorized and governed by the Bidding Procedures Order and applicable Sale Order, and, in the event of any inconsistency between the Plan, the Bidding Procedures Order, and the Sale Orders concerning the assumption and assignment of such Executory Contracts or Unexpired Leases, the terms of the applicable Sale Order shall govern and control) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and non-bankruptcy law. Accordingly, the Plan provides that the Debtors will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**b) The Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

44.     The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

45.     The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Disclosure Statement Order approving the Solicitation Packages and Solicitation and Voting Procedures.

46.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article IX of the Plan.

### c) Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))

47.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Plan Proponents have proposed the Plan and the Plan Documents in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates.  The Plan Proponents' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Disclosure Statement Hearing, and all the proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

48.     The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's-length among the Debtors and certain of their key stakeholders including, but not limited to, the Committee.  Further, the Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### d) Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))

49.     Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.    The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

### e) Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))

50.     Because the Plan provides for the orderly liquidation of the Debtors and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Debtors, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity of the Liquidating Trustee and the Liquidating Trust Board of Managers.

### f) No Rate Changes (11 U.S.C. § 1129(a)(6))

51.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

### g) Best Interests of Creditors (11 U.S.C. § 1129(a)(7))

52.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced in these Chapter 11 Cases and the facts and circumstances of these Chapter 11 Cases establish that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The liquidation analysis (as described in the Disclosure Statement), and the other evidence related

thereto, as supplemented by any evidence proffered or adduced in these Chapter 11 Cases (the "Liquidation Analysis"), are persuasive and credible. The Liquidation Analysis demonstrates that recoveries under the Plan are at least as high as they would be in a hypothetical liquidation. The methodology used and assumptions made in the Liquidation Analysis as supplemented by any evidence proffered or adduced in these Chapter 11 Cases, are reasonable.

### h)  Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))

53.     The Plan satisfies section 1129(a)(8) of the Bankruptcy Code. Class 1 (Secured Tax Claims), Class 2 (Other Secured Claims), Class 3 (Other Priority Claims), Class 4A (Employee PTO/Commission Full Pay GUC Claims), and Class 4B (Convenience Class Claims) are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 5 (General Unsecured Claims) voted to accept the Plan. Class 6 (Intercompany Claims), Class 7 (Intercompany Interests), Class 8 (Interests in Yellow Corporation), and Class 9 (Section 10(b) Claims) are Impaired Classes that will not receive or retain any property under the Plan on account of the Claim in each such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan (the "Deemed Rejecting Classes"). To the extent a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, such Class shall be deemed to have accepted the Plan. Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to reject the Plan.

### i)  Deemed Rejecting Classes (11 U.S.C. § 1129(b))

54.     Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) has not been satisfied with respect to the

Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes, as described further below.

**j)  Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9))**

55.    The treatment of Administrative Claims, Priority Tax Claims, Other Priority Claims, and Professional Fee Claims under Articles II and III of the Plan and payment of U.S. Trustee statutory fees under Article XIII of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**k)  Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))**

56.    The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Report, the Voting Class is Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).  Further, as set forth in the Voting Report, the Classes that are not entitled to receive or retain any property under the Plan are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**l)  Feasibility of the Plan (11 U.S.C. § 1129(a)(11))**

57.    The evidence proffered or adduced in these Chapter 11 Cases and in the Whittman Declaration and the Confirmation Brief:  (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors or the Liquidating Trust will have sufficient funds available to meet their obligations under the Plan.  The

Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code, to the extent applicable.

**m) Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12))**

58.     Article XIII.C of the Plan provides for the payment of all Quarterly Fees payable by the Debtors under section 1930(a) of the Judicial Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**n) Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16))**

59.     The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.   Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**o) Only One Plan (11 U.S.C. § 1129(c))**

60.     Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**p) Principal Purpose of the Plan (11 U.S.C. § 1129(d))**

61.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**q) Not a Small Business Case (11 U.S.C. § 1129(e))**

62.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**r)  Satisfaction of Confirmation Requirements**

63.    Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**Q.    Implementation**

64.    The Plan, all documents contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan, and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

**R.    Good Faith Solicitation (11 U.S.C. § 1125(e))**

65.    The Plan Proponents have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code, and the aforementioned parties have also acted in good faith within the meaning

of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article IX.D of the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distributions under the Plan (the "Plan Distributions") and, therefore, are not, and on account of such Plan Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Plan Distributions.

**S.      Executory Contracts and Unexpired Leases**

66.      Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided in the Plan.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in these Chapter 11 Cases.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

**A.      Findings of Fact and Conclusions of Law**

67.      The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by

Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

## B.        Confirmation of the Plan

68.        The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, is hereby confirmed under section 1129 of the Bankruptcy Code.  The Debtors are authorized to enter into, execute, and perform under all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Liquidating Trustee and the Liquidating Trust Board of Managers is hereby approved and authorized.  The Debtors, the Liquidating Trustee, and the Liquidating Trust Board of Managers, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including, without limitation, entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan.[8]  The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

69.        The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

---

[8]    All references herein authorizing specific actions by the Liquidating Trustee are subject to any applicable provisions of the Liquidating Trust Agreement that by their terms subject the authority of the Liquidating Trustee to the oversight and direction of the Liquidating Trust Board of Managers in accordance with the Liquidating Trust Agreement and are not intended to override such provisions.

**C.**     **Objections**

70.     To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record at the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

**D.**     **The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

71.     The release, injunction, exculpation, and related provisions set forth in Article IX of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date without further action or notice by this Bankruptcy Court, any of the parties subject to such provisions, or any other party, including, but not limited to:

a.   **Liens**.  The release of liens provisions set forth in Article IX.A of the Plan are hereby approved.

b.   **Releases by the Debtors**.  The Debtor Release provisions set forth in Article IX.B of the Plan are hereby approved.

c.   **Third-Party Releases**.  The Third-Party Release provisions set forth in Article IX.C of the Plan are hereby approved.

d.   **Exculpation**.  The Exculpation provisions set forth in Article IX.D of the Plan are hereby approved.

e.    **Injunction**.  The Injunction provisions set forth in Article IX.E of the Plan are hereby approved.

**E.**     **Classifications of Claims and Interests**

72.     The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots

tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

## F.    Plan Supplement

73.    The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Debtors, the Liquidating Trustee, the Liquidating Trust Board of Managers, and their successors are authorized when they are finalized, executed, and delivered.  Without further order or authorization of this Bankruptcy Court, the Debtors, the Liquidating Trustee, the Liquidating Trust Board of Managers, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

### G.    Liquidation Transactions

74.    On the Effective Date, or as soon as reasonably practicable thereafter, the Liquidating Trustee, subject to the oversight of the Liquidating Trust Board of Managers in accordance with the Liquidating Trust Agreement, shall take all actions as may be necessary or appropriate to effectuate the Liquidation Transactions, including, without limitation:   (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Liquidation Transactions; and (e) all other actions that the Liquidating Trustee determines to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

75.    This Confirmation Order authorizes, and shall be deemed to authorize, pursuant to sections 363 and 1123 of the Bankruptcy Code, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

### H.    Liquidating Trust

76.    The Debtors and the Liquidating Trustee will establish the Liquidating Trust on behalf of the Beneficiaries pursuant to the Liquidating Trust Agreement, with the Beneficiaries to be treated for all U.S. federal, state, and local income tax purposes as the grantors and deemed owners of their respective share of the Liquidating Trust Assets for purposes of transferring the

Liquidating Trust Assets to the Liquidating Trust as and to the extent set forth in the Liquidating Trust Agreement and subject to any limitations set forth therein. The Debtors and the Estates will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Beneficiaries, all of their rights, title, and interests in the Liquidating Trust Assets. The Liquidating Trust will accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Beneficiaries, subject to the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

77.    On the Effective Date, all Liquidating Trust Assets will vest and be deemed to vest in the Liquidating Trust in accordance with section 1141 of the Bankruptcy Code or as otherwise set forth in the Liquidating Trust Agreement. As of the Effective Date, all Liquidating Trust Assets vested in the Liquidating Trust shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan, the Liquidating Trust Agreement, or the Confirmation Order. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors and their Estates will have no reversionary or further interest in or with respect to any Liquidating Trust Assets or the Liquidating Trust. For the avoidance doubt, the transfer of the Assigned Insurance Rights to the Liquidating Trust is not an assignment of any Insurance Policy itself.

78.    The Liquidating Trustee and the Liquidating Trust Board of Managers shall be discharged and the Liquidating Trust shall be terminated, at such time as (1) all of the Liquidating Trust Assets have been liquidated or abandoned, (2) the Liquidating Trustee determines, with the approval of the Liquidating Trust Board of Managers, that the pursuit of Retained Causes of Action is not likely to yield sufficient additional Distributable Proceeds to justify further pursuit of such Retained Causes of Action and has received Bankruptcy Court approval to abandon such Retained Causes of Action in accordance with the terms of this Agreement, (3) all objections to the Disputed Claims and, if all Allowed Claims have been paid in full including Postpetition Interest, Disputed

Interests, have been resolved, (4) all distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made, and (5) the Chapter 11 Cases of the Debtors have been closed; provided, however, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless (x) the Bankruptcy Court, upon motion by the Liquidating Trustee within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) or (y) after the closing or dismissal of the Chapter 11 Cases, the Liquidating Trustee obtains a favorable private letter ruling from the Internal Revenue Service or a "should" level opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for U.S. federal income tax purposes, in either case, is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

## I.       Preservation of Causes of Action

79.    In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IV.N of the Plan, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall immediately vest in the Liquidating Trust as of the Effective Date.  As of the Effective Date, the Liquidating Trustee, subject to the Liquidating Trust Agreement and the oversight and direction of the Liquidating Trust Board of Managers in accordance therewith, shall have the right, authority, and discretion to

initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action and to decline to do any of the foregoing.

80.    **No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or if applicable, the Liquidating Trustee, will not pursue any and all available Causes of Action against it.  The Debtors and the Liquidating Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article IX of the Plan.**

**J.    Cancellation of Securities and Agreements**

81.    On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under any loan document and any other certificate, Security, share, note, bond, indenture, credit agreement, purchase right, option, warrant, or other instrument, agreement or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest shall be cancelled as to the Debtors and their Affiliates, and neither the Debtors nor the Liquidating Trust, as applicable, shall have any continuing obligations thereunder; and (2) the obligations of the Debtors and their Affiliates pursuant, relating, or pertaining to any agreements, credit agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, credit agreements, purchase rights, options, warrants, or other instruments, agreements, or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors shall be released and cancelled.  Notwithstanding the foregoing, no executory contract or unexpired lease (i) that has been, or will be, assumed pursuant

to section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

## K.    Corporate Action

82.    Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable:  (1) the implementation of the Liquidation Transactions; (2) the establishment of the Liquidating Trust and execution of the Liquidating Trust Agreement; (3) the funding of all applicable escrows and accounts; and (4) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law.

83.    From entry of this Confirmation Order, before, on or after the Effective Date (as appropriate), but subject to the occurrence of the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, partners, managers, members, or other owners of any Debtor under the Plan, including (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving any Debtor or organizational structure of any Debtor, shall be deemed to have occurred and shall be in effect before, on or after the Effective Date (as applicable), under applicable non-bankruptcy law, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, partners, managers, members, or other owners of any Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

L.      **Effectuating Documents; Further Transactions**

84.     On and after the Effective Date, the Liquidating Trust or Liquidating Trustee, as applicable, may issue, execute, deliver, file, or record such instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Confirmation Order, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan, the Liquidating Trust Agreement, or the Confirmation Order.

M.      **Exemption from Certain Taxes and Fees**

85.     To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Liquidating Trust or to any other Entity, or from the Liquidating Trust to a Beneficiary) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Liquidating Trust; (2)  any Third-Party Sale Transaction; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or

governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

86.     All filing or recording officers (or any other Entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**N.      Compliance with Tax Requirements**

87.     In connection with the Plan, to the extent applicable, the Debtors or the Liquidating Trust, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors or the Liquidating Trust, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

**O.      Director and Officer Liability Insurance; Other Insurance**

88.     On or before the Effective Date, the Debtors, with the reasonable consent of the Committee, shall maintain tail coverage for existing D&O Liability Insurance Policies for the

six-year period following the Effective Date on terms no less favorable than the Debtors' existing D&O Liability Insurance Policies and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing D&O Liability Insurance Policies upon placement.

89.     On and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies in effect or purchased as of the Effective Date for the full term of such D&O Liability Insurance Policies regardless of whether such officers, directors, agents, and/or employees remain in such positions as of the Effective Date, in each case, to the extent set forth in such D&O Liability Insurance Policies.

90.     For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall in any way impair the Liquidating Trust's ability on and after the Effective Date to assert on behalf of the Debtors or the Estates any Assigned Insurance Rights or Retained Causes of Action, including with respect to the D&O Liability Insurance Policies.  In no event shall the Liquidating Trust have any obligation to indemnify any officer, director, agent or employee of the Debtors, nor shall the Liquidating Trust have any obligation to satisfy or pay any deductible, retention, or other financial obligation under the Insurance Policies.  The Liquidating Trust shall be responsible for monitoring and preserving the ability to maintain claims that are Assigned Insurance Rights against the Insurance Policies.  The Debtors shall provide reasonable cooperation necessary to maximizing the value of the Assigned Insurance Rights.

**P.      Treatment of Executory Contracts and Unexpired Leases**

91.     The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes

concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) are hereby approved in their entirety.

92.     On the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected, shall be deemed automatically rejected, unless such Executory Contract or Unexpired Lease:  (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Effective Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is a Third-Party Sale Transaction Document; or (6) is to be assumed by the Debtors and assigned in connection with a Third-Party Sale Transaction and pursuant to the Third-Party Sale Transaction Documents.

93.     Entry of this Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' or the Estates' authority under the Third-Party Sale Transaction Documents to assume and assign Executory Contracts and Unexpired Leases pursuant to the Third-Party Sale Transaction Documents.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Liquidating Trustee.  Each Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Effective Date, shall revest in and be fully

enforceable by the Liquidating Trustee in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

**Q.   Provisions Governing Distributions**

94.     The procedures governing Plan Distributions contained in Article VI of the Plan are hereby approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Plan Distributions shall be made by the Disbursing Agent to make or facilitate the Plan Distributions.

**R.   Procedures for Resolving Disputed, Contingent, and Unliquidated Claims or Equity Interests**

95.     The procedures for resolving disputed, contingent, and unliquidated claims or equity interests contained in Article VII of the Plan are hereby approved in their entirety.

**S.   Provisions Relating to the Texas Comptroller**

96.     The following provisions of this Confirmation Order will govern the treatment of the Texas Comptroller of Public Accounts (the "Texas Comptroller") concerning the duties and responsibilities of the Debtors and the Liquidating Trust relating to all unclaimed property presumed abandoned (the "Texas Unclaimed Property") under Texas Property Code, Title 6, Chapters 72-76 and other applicable Texas laws (the "Texas Unclaimed Property Laws"):

97.     On or within thirty (30) days after the Effective Date, the Debtors shall review their books and records and turn over to the Texas Comptroller all known Texas Unclaimed Property presumed abandoned before the Petition Date and reflected in property reports delivered by the Debtors to the Texas Comptroller under the Texas Unclaimed Property Laws (the "Reported Unclaimed Property"). With respect to such Reported Unclaimed Property, the Texas Comptroller will not seek payment of any interest or penalty by the Debtors or the Liquidating Trust.  Nothing

in the Plan or this Confirmation Order shall convert the Texas Unclaimed Property to property of the Debtors estates or vest such property in the Liquidating Trust and the Texas Unclaimed Property shall continue to be held by the Debtors or Liquidating Trust until such time it is presumed abandoned, at which time the Texas Unclaimed Property shall be reported and remitted to the Texas Comptroller in accordance with the Texas Unclaimed Property Laws; *provided*, *however*, that the foregoing does not prejudice the Debtors' or the Liquidating Trust's right or ability to challenge the determination of what property constitutes Texas Unclaimed Property.

98.     Notwithstanding section 362 of the Bankruptcy Code and the any injunction provided in the Plan, after the Effective Date, the Texas Comptroller and its agents may commence an audit of the Debtors in accordance with the Texas Unclaimed Property Laws (the "Texas Unclaimed Property Audit") and pursue recovery of any unremitted Texas Unclaimed Property identified pursuant to the Texas Unclaimed Property Audit.  To the extent reasonably practicable, the Debtors and the Liquidating Trust shall fully cooperate with the Auditors to enable them to accurately and timely perform the Texas Unclaimed Property Audit by making the entities' employees, professionals, books, and records reasonably available during normal business hours. Upon completion of the Texas Unclaimed Property Audit, the Texas Comptroller will promptly inform the Debtors or the Liquidating Trust, as applicable, that such audit is complete.  The Debtors and Liquidating Trust shall continue to comply with Texas Unclaimed Property Laws regarding retention of records.

99.     The Debtors', Liquidating Trust's, and Texas Comptroller's rights and defenses with respect to any allegations, pending matters, and/or claims asserted against the Debtors arising from or relating to the Texas Unclaimed Property Audit are hereby reserved and preserved; provided, however, that upon agreement between the Debtors or the Liquidating Trust and the

Texas Comptroller or a final nonpeelable determination by a court or other tribunal with jurisdiction as to the amount of unremitted Texas Unclaimed Property, if any, that is due in connection with the Texas Unclaimed Property Audit, the Debtors or the Liquidating Trust shall turn over such unremitted Texas Unclaimed Property to the Texas Comptroller.

100.    The Texas Comptroller may amend any Proofs of Claim in these Chapter 11 Cases following the Effective Date as a result of the filing of any property reports or in the ordinary course of the Texas Unclaimed Property Audit.

101.    Nothing herein precludes Debtors or Liquidating Trust from compliance with continued obligations pursuant to Texas Unclaimed Property Laws.

**T.    Provisions Relating to the Texas Comptroller of Public Accounts, Revenue Accounting Division**

102.    Notwithstanding any term in the Plan or the Confirmation Order to the contrary: (i) the Texas Comptroller's setoff rights are preserved under section 553 of the Bankruptcy Code; (ii) pursuant to section 503(b)(1)(D) of the Bankruptcy Code, the Texas Comptroller shall not be required to file a request for payment of any amounts coming due to the Texas Comptroller postpetition; (iii) all taxes coming due to the Texas Comptroller postpetition shall be paid when due under non-bankruptcy law; and (iv) the bankruptcy shall have no effect on the Texas Comptroller's rights as to non-Debtor third parties.

103.    The Texas Comptroller has filed an amended Sales and Use Tax proof of claim [POC No. 6045] in the amount of $525,082.98.  In accordance with POC No. 6045, the Texas Comptroller shall have an Allowed Priority Tax Claim in the amount of $311,835.60.  To the extent this claim is not paid in full on or before the Effective Date, it shall be paid in full, at minimum, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code by regular quarterly installment payments in cash, beginning on the first day of the month following the Effective Date,

over a period not to exceed five years after the date of the order of relief under section 301 of the Bankruptcy Code, and with interest in accordance with section 511 of the Bankruptcy Code and Texas Tax Code Section 111.060(b) (currently 8.50%) accruing from the Effective Date.

104.    In accordance with POC No. 6045, the Texas Comptroller shall have an Allowed General Unsecured Claim in the amount of $213,247.38. The Allowed General Unsecured Claim shall receive the same treatment and distribution as all other general unsecured claims, as contemplated under the Plan.

**U.     Provisions Relating to Walmart**

105.    Notwithstanding anything to the contrary contained in the Plan (including, Article IX.E), the Plan Supplement or this Confirmation Order, to the extent that Walmart Inc. ("Walmart") holds rights or claims of setoff and/or recoupment, such rights and claims are fully preserved and nothing in the Plan, the Plan Supplement or this Confirmation Order shall operate to negatively impact any such rights or claims. The Debtors' and/or the Liquidating Trust's rights to object to, or dispute any, alleged rights or claims of setoff of recoupment of Walmart are fully preserved.

**V.     Provisions Relating to Corcentric**

106.    Notwithstanding anything to the contrary contained in the Plan (including Article IX.E), the Plan Supplement or this Confirmation Order, to the extent that Corcentric, LLC a/k/a Pinnacle Fleet Solutions ("Corcentric") holds rights or claims of setoff and/or recoupment, such rights and claims are fully preserved and nothing in the Plan, the Plan Supplement or this Confirmation Order shall operate to negatively impact any such rights or claims. The Debtors' and/or the Liquidating Trust's rights to object to, or dispute any, alleged rights or claims of setoff of recoupment of Corcentric are fully preserved.

**W.      Provisions Relating to Sureties and Surety Bonds**

107.      Notwithstanding anything to the contrary in this Confirmation Order, the Plan, any Plan Supplement, any Liquidating Trust Agreement, any Asset Purchase Agreements entered into in relation to these bankruptcy cases, any other documents incorporated into or related to the foregoing, or any amendments to the foregoing:  (a) nothing shall bar, release, impair, expand, alter, modify, amend, limit, enjoin, prime, or subordinate, nor shall permit or otherwise effectuate a sale, assumption and assignment, substitution, or any other transfer of, (i) the surety bonds (the "Existing Surety Bonds") executed for or on behalf of any of the Debtors by Westchester Fire Insurance Company, Argonaut Insurance Company, Atlantic Specialty Insurance Company, Liberty Mutual Insurance Company, Arch Insurance Company, Protective Insurance Company, or any of the foregoing's parent companies, affiliates, and/or successors (each, in its capacity as an issuer of an Existing Surety Bond, a "Surety", and collectively, in their respective capacities as issuers of Existing Surety Bonds, the "Sureties"), (ii) any indemnity agreements or other agreements between any Surety and any Debtor in these bankruptcy cases related to the Existing Surety Bonds (the "Surety Indemnity Agreements"), (iii) any cash, cash equivalents, accounts, letters of credit, other collateral, or proceeds of any of the foregoing (the "Surety Collateral"), (iv) any agreements related to the Surety Collateral (collectively with the Surety Indemnity Agreements and Existing Surety Bonds, the "Surety Agreements"), (v) the terms, conditions, rights, claims, defenses, and/or obligations of, to, or under the Surety Agreements or related to the Surety Collateral; and (b) nothing shall obligate the Sureties to release any Surety Collateral to the Debtors, any Liquidating Trust established under the Plan, or any Liquidating Trustee or Disbursing Agent, except to the extent consistent with the Surety Agreements after reimbursement of the Sureties with any Surety Collateral; and (c) for the avoidance of doubt, the Sureties have

not nor shall be deemed to have opted into any Third-Party Release under the Plan, and the Sureties are not nor shall be deemed to be Releasing Parties under the Plan.

## X.      Provisions Relating to New Jersey Self-Insurers Guaranty Association

108.    Notwithstanding any provision of the Plan to the contrary, the New Jersey Self-Insurers Guaranty Association can amend its claims after the Effective Date without being required to obtain written authorization from either the Liquidating Trustee or the Bankruptcy Court; *provided* that the rights and defenses of the Debtors, the Liquidating Trustee, or any party in interest with respect to such amended claim(s) are preserved, including any and all rights to object to any amended claim.

## Y.      Provisions Relating to Terreno Leases and FLP Lease

109.    Notwithstanding anything to the contrary herein or in the Plan, the unexpired nonresidential real property leases located at 25555 Clawiter Road, Hayward, CA (Y889) and 700 Dell Road, Carlstadt, NJ (Y126) (together, the "Terreno Leases") and 2410 S 2700 W, Salt Lake City, Utah (Y881) (the "FLP Lease") shall not be assigned to nor vest in the Liquidating Trust. Disposition of the Terreno Leases and the FLP Lease by the Debtors shall occur on or prior to the Effective Date.

## Z.      Provisions Relating to Madrona Cutter and Gulsons Cutter

110.    For the avoidance of doubt, nothing in the Plan or this Order reclassifies the Administrative Expense Claim (as defined in the Madrona Cutter Stipulation and Order) of Madrona Cutter L.L.C. and Gulsons Cutter, LLC, and the Administrative Expense Claim shall be treated in accordance with the *Order Approving the Joint Stipulation by and Among the Debtors and Madrona Cutter, LLC and Gulsons Cutter, LLC to Resolve Certain Administrative Claims* [Docket No. 7634] (the "Madrona Cutter Stipulation and Order").

**AA.    Provisions Relating to Realterm Leases**

111.    Notwithstanding anything to the contrary herein or in the Plan, (a) the unexpired nonresidential real property leases for the premises located at 1130 S Reservoir St., Pomona, CA and at 3500 Booth Avenue, Kansas City, MO (together, the "Remaining Realterm Leases") shall not be assigned to nor vest in the Liquidating Trust and the disposition of the Remaining Realterm Leases shall occur on or prior to the Effective Date; (b) in the event the Debtors seek an assignment of one or more of the Remaining Realterm Leases pursuant to a Third-Party Sale Transaction or otherwise, the Debtors shall provide the applicable Realterm Landlord under that Remaining Realterm Lease with notice and the opportunity to object to such proposed assignment of the Remaining Realterm Lease in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as applicable, and all rights of such Realterm Landlord with respect to such relief are expressly reserved; and (c) the Realterm Landlords' rights to file a proof of claim or other application to the Bankruptcy Court with respect to any claims arising from the rejection of the Realterm Landlords' leases, including the Remaining Realterm Leases (as applicable), previously assumed by the Debtors, whether pursuant to the Plan or by any order of the Bankruptcy Court, are expressly reserved; provided that the rights of the Debtors or the Liquidating Trust, as applicable, to object to such proof of claim or other application on any basis, including the priority asserted therein, are expressly reserved.

**BB.    Provisions Relating to the Peak Litigation**

112.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing herein or in the Plan shall preclude plaintiff Jack Peak from pursuing the claims now or hereafter asserted in the action captioned *Peak v. Yellow Corporation f/k/a YRC Worldwide, Inc.*, et al., Case No. 22-cv-02278-EFM-GEB (D. Kan. 2022) against the Debtors, as defendants, and against individual defendants.  Any such claims are preserved and not discharged or otherwise released or enjoined under the

Plan; *provided*, *however*, that all rights, privileges, and defenses of the defendants with respect to any such claims and any such available and applicable insurance, if any, are preserved and reserved in all respects.  Solely with respect to the Debtors, any final judgment will be paid pursuant to the Plan.

**CC.   Provisions Relating to Exel**

113.   Notwithstanding anything to the contrary contained in the Plan (including, Article IX.E), the Plan Supplement or this Confirmation Order, to the extent Exel Inc. d/b/a DHL Supply Chain (USA) ("Exel") holds rights or claims of setoff and/or recoupment, such rights and claims are fully preserved and nothing in the Plan, the Plan Supplement or this Confirmation Order shall operate to negatively impact any such rights or claims.  The Debtors' and/or the Liquidating Trust's rights to object to, or dispute any, alleged rights or claims of setoff of recoupment of Exel are fully preserved.

**DD.   Provisions Relating to Local 705 International Brotherhood of Teamsters Pension Fund ("Local 705")**

114.   Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the rights and defenses of each Local 705 and the Debtors with respect to Local 705's disputed Multiemployer Plan Claim, including the prior assertion, preservation or waiver of any claim, right, objection, argument, or defense, as applicable, shall be unaffected and remain as is as of, and following, the Effective Date.

**EE.   Provisions Relating to the IRS**

115.   Notwithstanding any other provision of the Plan or this Confirmation Order, the IRS shall not be required to file a motion or application for payment of its administrative expense claims pursuant to 11 U.S.C. § 503(b)(1)(D).

116.   Notwithstanding any other provision of the Plan or this Confirmation Order, the IRS's right to post-petition interest on its administrative, secured, and priority claims related to all

taxes is preserved and the Debtors shall make plan payments using the rate set under 11 U.S.C. § 511.

117.    Nothing contained in the Plan or this Confirmation Order shall affect any valid setoff or recoupment rights of the United States of America against any of the Debtors or any successor entities, and such rights are expressly preserved, subject to section 553 of the Bankruptcy Code.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall bar the IRS from exercising its non-bankruptcy rights to offset any request for a tax refund for a tax period ending prior to the Petition Date against any prepetition claims of the United States government against any of the Debtors to the extent permitted by Section 553 of the Bankruptcy Code.

118.    Nothing contained in the Plan, or this Confirmation Order, shall be deemed:  (1) to determine the federal tax liability of any entity, including, but not limited to, the Debtors; (2) to be binding on the IRS with regard to the federal tax liabilities, tax status, or tax filing and withholding obligations of any entity, including, but not limited to, the Debtors, or with regard to the tax treatment of any item of income, gain, loss, deduction, or credit; (3) to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liabilities or to hear and determine any right to a tax refund, except as provided under Section 505 of the Bankruptcy Code and Sections 157 and 1334 of Title 28 of the United States Code; and (4) to grant any relief to any entity, including the Debtors, that the Bankruptcy Court is prohibited from granting by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a), including the release, discharge, satisfaction or injunction against the collection of any claim of the IRS against any entity, including the Debtors, regardless of when the claim arose, except as permitted by 11 U.S.C. § 1141(d).

**FF.    Provisions Relating to the Mississippi Department of Revenue**

119.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary:

(a)     the Mississippi Department of Revenue's (the "MDOR") setoff rights under section 553 of the Bankruptcy Code and recoupment rights are preserved to the extent provided by applicable bankruptcy law, including but not limited to the Bankruptcy Code, and the Debtors' and Liquidating Trust's defenses thereto are expressly preserved;

(b)     the MDOR shall not be required to file any proofs of claim or requests for payment in the Chapter 11 Cases for any Administrative Claims for the liabilities described in section 503(b)(1)(B) and (C) of the Bankruptcy Code. The Debtors or the Liquidating Trustee as applicable, shall timely submit returns and remit payment, including penalties and interest, for all taxes due or coming, as required under applicable Mississippi state law;

(c)     to the extent the MDOR's Priority Tax Claims, if any, are not paid in full in cash on the Effective Date, such Priority Tax Claims shall, at a minimum, be paid by regular, quarterly installment payments in cash over a period not to exceed five years after the date of the order for relief under section 301 of the Bankruptcy Code, all as required section 1129(a)(9)(C) of the Bankruptcy Code, along with non-bankruptcy interest in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code and Mississippi state law, as applicable;

(d)     the statutorily mandated treatment of MDOR's Allowed Priority Tax Claims and/or any liabilities to MDOR described in section 503(b)(1)(B) and (C) of the Bankruptcy Code shall not be considered a settlement or compromise;

(e)     the MDOR may timely amend any Proof of Claim after the Effective Date or the Bar Date, whichever is later, with respect to (a) a pending audit, or (b) an audit that may be performed, with respect to any pre- or post-petition tax return; (c) following the filing of a tax return, or (d) to liquidate an unliquidated claim; and

(f)     in the event of a default in payment of Priority Tax Claims of the MDOR, the MDOR shall send written notice of default to the Debtors or the Liquidating Trustee, as applicable, to the address in MDOR's records.  If such default is not cured within 30 calendar days after such notice of default is mailed, the MDOR may (a) enforce the entire amount of its claim; (b) proceed with Mississippi state law remedies for collection of any amounts due and/or (c) seek such relief as may be available from the Court.

**GG.    Provisions Relating to the Environmental Protection Agency (the "EPA")**

120.    Nothing in this Order or the Plan or any implementing or supplementing documents

("Plan Documents") discharges, releases, precludes, or enjoins: (i) any liability to any

Governmental Unit that is not a Claim, including, for the avoidance of doubt, any environmental

liabilities arising from compliance obligations at property owned or operated by the Debtors as of the Effective Date; (ii) any Claim of a Governmental Unit arising under environmental laws on or after the Effective Date; (iii) any Claim of a Governmental Unit arising under police or regulatory law that any entity would be subject to as the owner or operator of property as of or after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any Person, or owner or operator of property as of or after the Effective Date; *provided, however*, with respect to the Liquidating Trust USTs and ASTs (as defined below) such liability shall be limited as set forth in this Order; *provided further*, that nothing in this paragraph shall limit, supersede, or diminish the scope of any exculpation provided under Section IX.D of the Plan, except that the exculpation provisions of the Plan shall not apply to any police or regulatory liabilities to any Governmental Unit under environmental laws.  Nor shall anything in this Order or the Plan or any Plan Documents enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.  With respect to the Liquidating Trust USTs and ASTs (as defined below), nothing in this Order or the Plan or any Plan Documents shall settle any Claim of, or liability to, a Governmental Unit arising under police or regulatory law against the Debtors, the Liquidating Trust or the Liquidating Trustee under environmental laws without the written consent of the Governmental Unit; *provided* that, if the parties are unable to reach resolution of Claims and liabilities related to the Liquidating Trust USTs and ASTs, the Debtors, the Liquidating Trust, the Liquidating Trustee, or the Governmental Unit, as applicable, may submit such dispute to the Bankruptcy Court or District Court, as applicable, for resolution in the event of a disagreement between the Debtors, the Liquidating Trust, the Liquidating Trustee and the Governmental Unit; *provided further*, that such disputes may include a dispute as to the dischargeability of any Claim of, or liability to, a Governmental Unit arising under police or

regulatory law against the Debtors, the Liquidating Trust or the Liquidating Trustee under environmental laws. For the avoidance of doubt, to the extent that a Governmental Unit has a Claim arising under police or regulatory law against the Debtors, the Liquidating Trust or the Liquidating Trustee under environmental laws that is adjudicated to be a dischargeable Claim, such Claim shall be treated in accordance with the Plan.

121.    Notwithstanding any provision of the Plan, this Order, or any Plan Documents, Governmental Units' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, shall be preserved and are unaffected. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or the Plan or Plan Documents or to adjudicate any defense asserted under this Order or the Plan or Plan Documents. For the purposes of this paragraph solely, all references to "police or regulatory liability" and "police or regulatory law" shall be interpreted consistent with 11 U.S.C. § 362(b)(4), notwithstanding the termination of the automatic stay on the Effective Date.

122.    Notwithstanding any provision in this Order or the Plan or Plan Documents: (1) all USTs and ASTs that are set forth on **Schedule A** shall be transferred to the Liquidating Trust (the "Liquidating Trust USTs and ASTs"); *provided that*, any UST or AST located on property that is sold by the Debtors or the Liquidating Trust shall cease to be a Liquidating Trust UST or AST upon the entry of the applicable sale order by the Bankruptcy Court; (2) the Liquidating Trustee shall comply with all applicable state and federal laws, regulations, and rules governing the Liquidating Trust USTs and ASTs, including but not limited to those governing operations, out of service status, registration, transfer, decommissioning, closure, cleanup, and corrective action for releases relating to those USTs and ASTs; (3) the Liquidating Trustee shall address any

residual liabilities, if any, including releases, with respect to the Liquidating Trust USTs and ASTs under applicable non-bankruptcy law.

123.    A total of $2,700,000 million of the funds of the Liquidating Trust shall be set aside and held in trust, in a segregated account, to address any liabilities arising under subparagraphs (2) and (3); *provided*, upon (i) the closing of a sale concerning any UST/AST between the Debtors, the Liquidating Trust or the Liquidating Trustee and a third-party purchaser and (ii) the complete transfer of all UST/AST liabilities of the Debtors, the Liquidating Trust or the Liquidating Trustee to the third-party purchaser, to the extent the asset purchase agreement provides that the third-party purchaser shall assume any and all liabilities of the Debtors, the Liquidating Trust or the Liquidating Trustee arising from the operations of the USTs/ASTs, then the release funds allocated to the USTs/ASTs sold shall automatically become unrestricted and can be used for general purposes as set forth in the Plan; *provided further*, upon the date that is five (5) years after the Effective Date, then any remaining funds held in trust to address any liabilities arising under subparagraphs (2) and (3) shall automatically become unrestricted and can be used for general purposes as set forth in the Plan; *provided, further,* the Liquidating Trustee may seek the agreement of the applicable Governmental Unit or an order of the Bankruptcy Court or District Court, as applicable, at any time seeking the release of funds held in trust to address any liabilities arising under subparagraphs (2) and (3).  The Liquidating Trustee may not abandon, pursuant to 11 U.S.C. § 554(a), any USTs and ASTs without complying with all applicable state and federal laws, regulations, and rules governing the Liquidating Trust USTs and ASTs, including with respect to conditions in place protecting public health and safety, and without providing fourteen (14) days' written notice, by e-mail, to the federal government and applicable state Governmental Units.  The Liquidating Trustee shall maintain in good order the Debtors' financial assurance and insurance

coverage for all the Liquidating Trust USTs and ASTs, as required under applicable state and federal laws, regulations, and rules.

124.    Furthermore, with respect to the properties listed on **Schedule B**, which for the avoidance of doubt are not Liquidating Trust USTs or ASTs, the Debtors or the Liquidating Trustee, as applicable, shall use commercially reasonable efforts to cause the current owner or operator (the "Owner") to promptly take necessary steps to correct any registrations still in the Debtors' name.

125.    Notwithstanding anything to the contrary in this Order, the Plan or Plan Documents, Claims of Governmental Units under environmental laws may be estimated only as permitted and provided for by and in accordance with section 502(c) of the Bankruptcy Code.  The rules and procedures for such estimation shall be determined by the Court after briefing by any interested parties, including any applicable Governmental Units.

126.    To the extent that any asset purchase agreement concerning the sale of USTs/ASTs entered into between the Debtors, the Liquidating Trust or the Liquidating Trustee and a third-party purchaser provides that the third-party purchaser shall assume certain liabilities and obligations arising from the operations of the sold USTs/ASTs, Governmental Units shall succeed to the Debtors' and/or Liquidating Trust or Liquidating Trustee's rights against the third-party purchaser on account of such UST/AST liabilities, as applicable.

**HH.    Conditions to Effective Date**

127.    The provisions governing the conditions precedent to the Effective Date set forth in Article X of the Plan are hereby approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms to the extent waivable.

II.     **The Liquidating Trust**

128.    The provisions governing the Liquidating Trust set forth in Article VIII of the Plan are hereby approved in their entirety.  The Liquidating Trust has standing to pursue the Liquidating Trust Assets on behalf of the Debtors.

JJ.     **Retention of Jurisdiction**

129.    The provisions governing the retention of jurisdiction set forth in Article XII of the Plan are hereby approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain jurisdiction over the matters arising in, and under, and related to, these Chapter 11 Cases, as set forth in Article XII of the Plan.

KK.     **Immediate Binding Effect**

130.    Subject to Article X.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trust, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

LL.     **Additional Documents**

131.    On or before the Effective Date, the Plan Proponents may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Plan Proponents or Liquidating Trustee (subject to the terms of the Liquidating Trust Agreement), as applicable, and all Holders receiving the Plan Distributions and all other parties in interest may, from time to time, prepare, execute,

and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## MM.   Payment of Statutory Fees

132.    Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Liquidating Trust, or any entity making disbursements on behalf of any Debtor or the Liquidating Trust, or making disbursements on account of an obligation of any Debtor or the Liquidating Trust (each, a "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Liquidating Trust, on behalf of itself or any entity making disbursements on behalf of the Liquidating Trust, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors, the Liquidating Trust and any Disbursing Entity shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the Chapter 11 Cases, and shall not be treated as providing any release under the Plan.

## NN.   Reservation of Rights

133.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor or the Committee with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed

to be an admission or waiver of any rights of any Debtor or the Committee with respect to the Holders unless and until the Effective Date has occurred.

## OO.   Notices

134.    On or after the Effective Date, the Liquidating Trustee may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  On or after the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests, *provided* that the Notice of the Effective Date discloses that Entities who wish to continue to receive service of filings must file a renewed request for service under Bankruptcy Rule 2002.

## PP.   Non-Severability of Plan Provisions

135.    The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:   (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Committee, consistent with the terms set forth in the Plan; and (c) non-severable and mutually dependent.

## QQ.   Governmental Approvals Not Required

136.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and the Liquidation Transactions, including any actions necessary or appropriate for such purposes.

**RR.    Recording**

137.    The Debtors and the Liquidating Trustee, as applicable, hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached, to any state or local recording officer.

**SS.    Effect of Conflict between Plan and Confirmation Order**

138.    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in this Confirmation Order).  In the event of an inconsistency between this Confirmation Order and the Plan or Plan Supplement, this Confirmation Order shall control.

**TT.    Implementing Documents**

139.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents necessary or appropriate to effectuate, implement, or consummate the Plan, including the Liquidation Transactions, and this Confirmation Order.

**UU.    Authorization to Consummate**

140.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article X of the Plan.

**VV.    Debtors' Actions Post-Confirmation Through the Effective Date**

141.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to manage their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court

that is in full force and effect. During such period, the Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Liquidation Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Liquidation Transactions, in each case subject to the terms and conditions of the Plan. Notwithstanding anything to the contrary herein or in the Plan, upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Pleadings.

## WW.  Notices of Confirmation and Effective Date

142.    On or as soon as reasonably practicable after the Effective Date, the Debtors shall file notice of the Effective Date and shall serve a copy of the same on the Bankruptcy Rule 2002 service list. The Debtors may serve the notice of the Effective Date via email; provided that no notice of the Effective Date shall be required to be served upon any Entity for which the Debtors do not have a street address or e-mail address that is confirmed to be accurate and current.

143.    After the Effective Date, the Liquidating Trustee may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests, *provided* that the Notice of the Effective Date discloses that Entities who wish to continue to receive service of filings must file a renewed request for service under Bankruptcy Rule 2002.

144.    The above-referenced notices are adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

**XX.    Return of Adequate Assurance Deposits**

145.    Upon the Effective Date, the Adequate Assurance Deposit, as defined and established by the Debtors under the order entered at Docket Number 534, shall be returned to the Debtors, less any amount owed on account of unpaid, postpetition utility services, by no later than seven business days following the Effective Date.

**YY.    Dissolution of Statutory Committees**

146.    On the Effective Date, any statutory committee appointed in these Chapter 11 Cases, including the Committee, shall dissolve and the members thereof, shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except in connection with (a) applications for compensation and objections thereto and (b) any pending appeals, including any appeals of the Confirmation Order.  The Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with (a) applications for payment of any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court; (b) objections to applications for payment of fees and expenses rendered prior to the Effective Date; and (c) any pending appeals, including any appeals of the Confirmation Order.

**ZZ.    Headings**

147.    Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**AAA.  Final Order**

148.    This Confirmation Order is intended to be a final order, such that the period within which an appeal must be Filed would commence upon the entry hereof.

**Schedule A**

**Liquidating Trust USTs and ASTs**

| Property Address | City | State | Zip | UST Count | AST Count | Government Contacts for E-Mail Notice* |
|---|---|---|---|---|---|---|
| 2000 East Lincoln Highway | Chicago Heights | IL | 60411 | 5 | 0 | Eescdcopy.enrd@usdoj.gov; Teresa.Pisula@Illinois.gov |
| 2410 S 2700 W | Salt Lake  City | UT | 84119 | 1 | 0 | Eescdcopy.enrd@usdoj.gov; rwixom@agutah.gov |
| 25555 Clawiter Road | Hayward | CA | 94545 | 1 | 0 | Eescdcopy.enrd@usdoj.gov; eric.katz@doj.ca.gov |
| 6351 S Hanover Road | Elkridge | MD | 21075 | 0 | 1 | Eescdcopy.enrd@usdoj.gov; melanie.barney@maryland.gov |
| 2021 S 51st Avenue | Phoenix | AZ | 85043 | 6 | 0 | Eescdcopy.enrd@usdoj.gov; figueroa.vivian@azdeq.gov |

*E-mail contacts may be periodically updated.

**Schedule B**

| Property Address | City | State | Zip | UST Count | AST Count |
|---|---|---|---|---|---|
| 6311 E Lombard Street | Baltimore | MD | 21224 | 1 | 0 |
| 55 Industrial Road | Cumberland | RI | 02864 | 1 | 0 |
| 11740 Dixie Highway | Birch Run | MI | 48415 | 1 | 0 |
| 700 Dell Road | Carlstadt | NJ | 07072 | 1 | 0 |
| 10661 Etiwanda Avenue | Fontana | CA | | | 2 |
| 2807 70th Avenue East | Fife | WA | 98424 | 1 | 1 |
| 12340 E Northwest Highway | Garland | TX | 75228 | 0 | 1 |
| 1330 Henry Brennan | El Paso | TX | | 4 | |
| 3924 S County Road 129 | Odessa | TX | | 1 | |
| 8011 Killam Industrial Blvd | Laredo | TX | | SQG | |
| 9415 Wallisville Road | Houston | TX | | SQG | |

## Exhibit A

**Plan**